UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-62533-CIV-ROSENBAUM

WILMINGTON TRUST COMPANY,

    Appellant,

v.

JEFFERIES LEVERAGED CREDIT
PRODUCTS, LLC, and CASTLE
CREEK ARBITRAGE, LLC,

    Appellees.
_____/

In re:

TOUSA, INC., *et al.*,

    Debtors.
_____/

## OPINION AND ORDER

    This matter is before the Court upon the Brief of Appellant Wilmington Trust Company [ECF No. 8]. The Court has considered the brief, all supporting and opposing filings, and the record in this case. For the reasons set forth below, the Court affirms the Bankruptcy Court's Order that classified certain Lot-Option-Agreement Claims and Model-Home Claims as claims entitled to Senior-Debt status.

### *BACKGROUND*

    On January 29, 2008, TOUSA, Inc., and its subsidiaries, including TOUSA Homes, Inc. ("THI"), filed for Chapter 11 bankruptcy in this District. *In re TOUSA, Inc.*, No. 08-10928, ECF No. 1 (Bankr. S.D. Fla. Jan. 29, 2008). TOUSA, Inc., and its subsidiaries design, build, and market

detached single-family residences, town homes, and condominiums. *Id.* at 6.

Prior to filing for bankruptcy, and as relevant to this appeal, THI had entered into six Option Agreements and one Master Purchase, Construction Management, and Rental Agreement with various landowners. *See* ECF Nos. 9-4 through 9-10. Under these Agreements, THI agreed to possess the landowners' undeveloped land in order to develop residential subdivisions on the land. *Id.* All of these Agreements provided THI with the exclusive right and option to purchase all or any number of the landowners' lots in consideration for THI's Lot-Option Deposit. *See, e.g.*, ECF No. 9-4 at 1-2.

Notwithstanding THI's "option" to purchase any and all of the lots, the language of the Agreements suggests that THI's purchase of at least some lots is mandatory under the Agreements. *See* ECF No. 9-4 at 12, § 10(f) ("in no event shall the Option be terminated, and [THI] shall have no right to terminate the Option, until [THI] purchases and pays for the first ten (10) Lots in the First Option Period."); 9-9 at 12, § 10(f) (similar language); 9-6 at 2 § 1(d) ("Owner shall have the absolute right, in its sole discretion . . . to require [THI] to purchase the Lots that have not been purchased by [THI], or if not platted, the entire Property."); 9-8 at 2, § 1(d) ("in the event that [THI], for any reason whatsoever, other than a default by Owner, does not exercise the Option to purchase Lots . . . and such failure is not cured . . . then Owner may justifiably wish to require [THI] purchase the Lots that have not been purchased by [THI]"); 9-5 at 9, § 10 ("to maintain the Option, [THI] must purchase a number of Lots . . . set forth on attached Exhibit B . . . until all Lots have been acquired by [THI]."); 9-7 at 10, § 10 (same). Appendices attached to the Agreements list the "Required Cumulative Lot Purchases" during each of the option periods. *See* ECF Nos. 9-4 at 73-75; 9-8 at 26; 9-9 at 34-36.

THI failed to fully exercise its purchase options under these Agreements. Appellees Jefferies Leveraged Credit Products, LLC, and Castle Creek Arbitrage, LLC, acquired the interests of the landowner parties to these Agreements and filed proofs of claims with the Bankruptcy Court for THI's failure to exercise its options as required under the Agreements. *See* ECF No. 8 at 1.

After years of litigation, the Bankruptcy Court confirmed Debtors' Plan. *TOUSA, Inc.*, No. 08-10928, ECF No. 9441 (Bankr. S.D. Fla. Aug. 6, 2013). As relevant to the instant appeal, the Plan provided that distributions for unsecured claims made by Debtors such as THI are divided into three classes of claims: Class 4A Senior Note Guaranty Claims, Class 4B General Unsecured Claims, and Class 4C Subordinated Note Claims. *See TOUSA, Inc.*, No. 08-10928, ECF No. 9168 at 33-34, § III.D.4 (Bankr. S.D. Fla. May 15, 2013). This classification scheme was implemented to give effect to provisions of governing Subordinated Notes Indentures that provided that subordinated-note claims are subordinated in right of payment to the payment in full of "Senior Debt." *See* ECF No. 9-11 at 79, § 12.01.

Prior to confirmation of the Plan, Appellees had moved the Bankruptcy Court for a determination that their claims based on the Lot-Option Agreements were entitled to Senior-Debt status under the Subordinate Notes Indentures and, accordingly, entitled to classification as Class 4A Senior Note Guaranty Claims. *TOUSA, Inc.*, No. 08-10928, ECF No. 9261 (Bankr. S.D. Fla. June 28, 2013). After a hearing, on August 2, 2013, the Bankruptcy Court issued an Order finding the Lot-Option-Agreement Claims entitled to Senior Debt status and, therefore, classifiable as Class 4A Claims. *TOUSA, Inc.*, No. 08-10928, ECF No. 9435 (Bankr. S.D. Fla. Aug. 2, 2013).

Appellant Wilmington Trust Company, a Creditor in the underlying bankruptcy case, here appeals the Bankruptcy Court's Order. ECF No. 1. Appellant argues that the Lot-Option-Agreement

Claims are not entitled to Senior-Debt status and should therefore be classified as Class 4B General Unsecured Claims under the Plan. *See* ECF No. 8 at 7.

### *JURISDICTION*

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). With regard to appeals from bankruptcy courts, district courts enjoy jurisdiction over only three types of orders: (1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. Pro. 8001(b). *Tobkin v. Calderin*, 2012 WL 3609867, at *1 (S.D. Fla. Aug. 22, 2012). As this Court has explained, district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." *Id.* at *1-*2; 28 U.S.C. § 158(a)(1).

"[A] final order in a bankruptcy proceeding is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *In re Culton*, 111 F.3d 92, 93 (11th Cir. 1997) (citing *In re Tidewater Group, Inc.*, 734 F.2d 794, 795-96 (11th Cir. 1984)). Appellant argues that the August 2, 2013, Order is a final order because it fully resolved the underlying dispute about whether the Lot-Option-Agreement Claims are entitled to Senior-Debt status. Indeed, the Order itself contemplates that it may be considered a final order. *See* ECF No. 1 at 4 ("To the extent this order become a Final Order, holders of the Lot Option Agreement Claims shall receive distributions . . . as if such Claims were included in Class 4A"). Thus, the Bankruptcy Court's Order is a final, appealable order.

### *STANDARD OF REVIEW*

Bankruptcy courts are governed by the Federal Rules of Bankruptcy Procedure. Under Rule

8013, Fed. R. Bankr. P., a district court reviews the factual findings of a bankruptcy court for clear error. As for the conclusions of law of the bankruptcy court and the application of the law to the particular facts of the case, a district court must conduct a *de novo* review. *See In re Feingold*, 474 B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *In re Club Assocs.*, 951 F.2d 1223, 1228-29 (11th Cir.1992)) ("The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*").

## DISCUSSION

This appeal centers on the contractual interpretation of both the Lot-Option Agreements and the Subordinated Notes Indentures. Under the Indentures, "Senior Debt" is defined as follows:

> all of [the Company's] Obligations with respect to Debt, whether outstanding on the Issue Date of the Notes or thereafter Incurred, and shall include (i) all obligations for interest accruing on or after the filing of any petition in bankruptcy or for reorganization relating to the Company whether or not such post-filing interest is allowed in such proceeding and (ii) all fees, expenses and indemnities and all other amounts payable with respect to Debt; provided, however, that Senior Debt shall not include [obligations that are by their terms subordinated, debt incurred in violation of the Indenture, obligations to the Company's subsidiaries, and obligations with respect to capital stock].

ECF No. 9-11 at 21. Thus, aside from certain exceptions that are not applicable here, THI's obligations with respect to Debt would be considered Senior Debt under the Indentures. The Indentures define "Debt," in turn, as follows:

> (1) the principal of, premium (if any) and any other Obligations in respect of:
>
> > (a) debt of such Person for money borrowed, and
> >
> > (b) debt evidenced by notes, debentures, bonds or other similar instruments for the payment of which such Person is responsible or liable;

-5-

> . . . .
>
> > (3) all obligations of such Person issued or assumed as the deferred purchase price of Property, all conditional sale obligations of such Person and all obligations of such Person under any title retention agreement (but excluding trade accounts payable arising in the ordinary course of business);

*Id.* at 18. Thus, as relevant here, any obligation would be considered Debt—and Senior Debt—if it is (1) "debt . . . for money borrowed," (2) "the deferred purchase price of Property," or (3) a "conditional sale obligation."

Appellant argues that Appellee's claims cannot be entitled to Senior-Debt status because they arise from contracts that are styled as option agreements. ECF No. 8 at 11-15. But Appellant points to no provision of the Indentures that would prevent a claim from attaining Senior Debt status solely because it arises from an agreement that is formally labeled an option agreement, and the Court is aware of no such provision. Accordingly, the Court looks to the structure of the Agreements themselves, and not to their labels, to determine whether the claims meet the definition of "Debt" under the Indentures.[1] *See Heryford v. Davis*, 102 U.S. 235, 243-44 (1880) ("the true construction of the contract . . . is not to be found in any name which the parties may have given to the instrument . . . but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account."). As the Eleventh Circuit has explained, unlike in situations where only the interests of the contracting

---

[1] Though six of the Agreements are formally labeled "Option Agreements," Debtors themselves accounted for these transactions as "financing arrangements" and describe them as agreements whose "substance . . . is no more than a complicated financing mechanism." ECF Nos. 9-14 at 15; 18-4 at 2. Appellees suggest that one of THI's purposes in structuring these financing mechanisms as option contracts was to keep the obligation to acquire the properties off of THI's balance sheet. *See* ECF No. 2-11 at 42:13-:19.

parties are at issue, courts should go "behind the terms of the agreement to protect the legitimate interests of innocent third parties" in situations such as bankruptcy. *Leasing Serv. Corp. v. River City Const., Inc.*, 743 F.2d 871, 879 (11th Cir. 1984).

Turning first to the issue of a conditional-sale transaction, the parties agree that such a transaction occurs when "(i) the buyer takes possession of the property, (ii) the seller retains title to the property, (iii) the buyer has an obligation to pay the purchase price, and (iv) upon such payment, title will transfer to the buyer." ECF Nos. 8 at 19; 17 at 14 (citing *Black's Law Dictionary* 1364 (9th ed. 2004)); *see also Gen. Sec. Ins. Co. v. Reliance Ins. Co.*, 33 F. App'x 310, 313 n.1 (9th Cir. 2002) (quoting similar definition from Black's Law Dictionary); *Transcon Trailers, Inc. v. Northland Ins. Co.*, 436 So. 2d 380, 381 (Fla. 5th DCA 1983) (same).

Appellees note that under the Agreements, THI initially took possession of the property in order to develop the land while the landowner retained title to the land. *See* ECF Nos. 17 at 14-16; 9-4 at 6-7, § 4 ("[THI] shall have a license . . . to use the Property before its purchase thereof for . . . any and all other purposes reasonably necessary in connection with [THI's] intended development activities"); *id.* at 24, § 20(j) ("unless and until [THI] exercises its rights to purchase the Lots as described herein, [THI] shall have no fee interest in the Lots, equitable or otherwise, and that fee title to the Lots shall be held by Owner."). The Agreements then obligated THI—to varying degrees—to exercise its option to purchase the lots, and upon such payment, title would transfer to THI. *See id.* at 12, § 10(f) ("[THI] shall have no right to terminate the Option, until [THI] purchases and pays for the first ten (10) Lots"); *id.* at 13, § 11 ("Upon a Closing, title to each Lot purchased shall be conveyed to [THI]").

Appellant asserts that THI never exercised any option to purchase lots under the Agreements,

and therefore the Agreements cannot be considered conditional-sale transactions. ECF No. 8 at 19-20. But as Appellees note, Appellants point to no part of the record that shows that THI never purchased any of the lots under the Agreement.[2] Furthermore, even if THI had purchased no lots under any of the Agreements, that fact does not change the Agreements' nature as a conditional-sale transaction. As Appellant's Brief notes, under a conditional-sale transaction "title *will* transfer to the buyer" upon payment of the purchase price. ECF No. 8 at 19 (citing *Black's Law Dictionary* 1364 (9th ed. 2004)) (emphasis added). Transfer of title need not have already occurred in order for a given transaction to be classifiable as a conditional-sale transaction.

Nor would the Indentures' definition of "Debt" make sense under Appellant's interpretation of the requirements of a conditional-sale transaction. If the entity in possession of the property had already paid the purchase price and received title to the property, then presumably it would no longer owe any payment obligation to the original titleholder. Thus, Appellant's interpretation of a conditional-sale transaction leads to the absurd result that the Indentures' definition of "Debt" includes transactions for which, as Appellant would have it, the debt has already been paid and is no longer outstanding.

Thus, the transactions at issue are properly characterized as conditional-sale transactions. Because the Court determines that the Lot-Option Agreements are conditional-sale transactions and, therefore, the Lot-Option-Agreement Claims are entitled to Senior-Debt status on that basis, the Court need not consider whether the Claims are also entitled to Senior-Debt status on the

---

[2] Of course, Appellee's claims in the underlying bankruptcy proceedings are premised on THI's failure to fully perform under the Agreements. *See TOUSA, Inc.*, No. 08-10928, ECF No. 9261 at 3-4 (Bankr. S.D. Fla. June 28, 2013). Thus, even if THI did purchase some lots, as Appellees suggest, THI presumably did not purchase all the lots required under the Agreements.

independent bases that the claims are "debt . . . for money owed" or "the deferred purchase price of property."

## *CONCLUSION*

For the foregoing reasons, the Bankruptcy Court's Order Regarding Classification of Certain Lot Option Agreement and Model Home Claims Under the Joint Plan of Liquidation is **AFFIRMED**. The Clerk of Court shall **CLOSE** this case. All pending motions are **DENIED as MOOT.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 24th day of April 2014.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record